RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0191p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

JAMES B. HURLEY and BRANDI HURLEY,
jointly and severally,

                            *Plaintiffs-Appellees,*

      *v.*

DEUTSCHE BANK TRUST COMPANY
AMERICAS, f/k/a Bankers Trust Company, as
Trustee and Custodian by SAXON MORTGAGE
COMPANY SERVICES, INC., f/k/a Meritech
Mortgage Services, Inc.,

                            *Defendants-Appellees,*

DAVID C. LOHR and ORLANS ASSOCIATES,
P.C.,

                            *Defendants-Appellants.*

> No. 09-1964

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 08-00361—Gordon J. Quist, District Judge.

Argued: April 27, 2010

Decided and Filed: July 1, 2010

Before: CLAY and GILMAN, Circuit Judges; ZATKOFF, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Ernest Raymond Bazzana, PLUNKETT COONEY, Detroit, Michigan, for Appellants. Frank B. Melchiore, LAW FM, Saint Petersburg, Florida, Matthew R. Cooper, SCHUITMAKER COOPER SCHUITMAKER CYPHER & KNOTEK, P.C., Paw Paw, Michigan, for Appellees. **ON BRIEF:** Donald H. Dawson, Jr., Kathleen A. Clark, DAWSON & CLARK, P.C., Detroit, Michigan, for Appellants. Frank B. Melchiore, LAW FM, Saint Petersburg, Florida, Frederick J. Boncher, SCHENK, BONCHER & RYPMA, Grand Rapids, Michigan, Matthew R. Cooper,

_____

[*] The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

SCHUITMAKER COOPER SCHUITMAKER CYPHER & KNOTEK, P.C., Paw Paw, Michigan, Daniel G. Romano, Southfield, Michigan, for Appellees.

———————————

**OPINION**

———————————

CLAY, Circuit Judge.  Defendants, David C. Lohr and Orlans Associates, P.C., appeal from the district court's order denying Defendants' motion to compel arbitration on the basis that Defendants waived their right to enforce an arbitration clause against Plaintiffs.  For the reasons set forth below, we **AFFIRM** the district court's order.

**STATEMENT OF FACTS**

On May 2, 2007, Plaintiffs, James B. Hurley and Brandi Hurley,[1] filed this lawsuit against Defendants, Deutsche Bank Trust Company Americas f/k/a Bankers Trust Company, as Trustee and Custodian by Saxon Mortgage Company Services, Inc., f/k/a Meritech Mortgage Services, Inc. ("Deutsche Bank"), David C. Lohr and Orlans Associates, P.C. ("Orlans"), alleging violations of the Servicemembers' Civil Relief Act ("SCRA"), 50 U.S.C. § 501, and state law claims of infliction of emotional distress, fraud, and conversion.

Plaintiffs brought this suit after Defendants foreclosed on Plaintiffs' home.  Since September 7, 1984, James Hurley has been a member of the Michigan Army National Guard and is currently a sergeant.  On September 26, 1994, Sergeant Hurley purchased a residence in Hartford, Michigan ("the Property").  On September 30, 2003, Sergeant Hurley received a loan in the amount of $95,200 and executed a mortgage on the Property as security for the loan.  As part of the mortgage documents, Hurley executed a rider entitled Arbitration of Disputes stating:

> All disputes, claims, or controversies arising from or related to the loan evidenced by the Note ("the Loan"), including statutory claims, shall be resolved by binding arbitration, and not by court action, except as

———————————

[1] Plaintiffs James B. Hurley and Brandi Hurley are married.

provided under [specified exclusions]. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act (9 U.S.C. §§ 1-14).

(Dist. Ct. R.E. 81 Ex. 1 at 18).

On July 2, 2004, the Michigan Department of Military and Veterans Affairs ordered Sergeant Hurley to active duty at Camp Roberts, California for training from July 21, 2004 through August 20, 2004, plus allowable travel time. While Sergeant Hurley was training in California, he fell behind in his mortgage payments. According to Plaintiffs, Sergeant Hurley had to spend all of his family's income preparing for his deployment to Iraq on items such as socks, underwear, personal hygiene products, and tools for use in Iraq.

Sergeant Hurley returned to Michigan in September 2004. On September 9, 2004, the U.S. Army ordered Sergeant Hurley's National Guard Unit to active duty in support of Operation Iraqi Freedom for an initial period of 18 months beginning on October 1, 2004. On October 12, 2004, the Michigan Department of Military and Veterans Affairs ordered Sergeant Hurley to active duty as a member of his Reserve Component Unit in support of Operation Iraqi Freedom. These orders required Sergeant Hurley to report to his home station in Greenville, Michigan on October 25, 2004 and be mobilized out of Fort Dix, New Jersey on October 28, 2004 for a period of active duty not to exceed 730 days.

On October 14, 2004, following notice by publication, Defendants held a sheriff's sale of the Property. Deutsche Bank placed the highest bid of $70,000 and obtained a sheriff's deed to the Property that was to become operative after six months. For the sale to occur, David C. Lohr, one of Defendants herein, signed an affidavit saying:

The undersigned, being first duly sworn, states that upon investigation he is informed and believes that none of the persons named in the notice attached to the sheriff's deed of mortgage foreclosure, nor any person upon whom they or any of them were dependent, were in the military

> service of the United States at the time of sale or for six months prior thereto; nor the present grantee(s).
>
> The undersigned further states that this affidavit is made for the purpose of preserving a record and clearing title by virtue of the Soldiers' and Sailors' Relief Act of 1940 [predecessor to the SCRA], as amended.

(Dist. Ct. R.E. 81 Ex. 2 at 3).

On May 3, 2005, Defendants initiated eviction proceedings against Sergeant Hurley and all other occupants, which required Sergeant Hurley to appear in the Van Buren County District Court in South Haven, Michigan on May 13, 2005. On the May 6, 2005 proof of service for the eviction action, the process server wrote: "according to spouse, Hurley is in the military in Iraq." (Dist. Ct. R.E. 43 Ex. 18). The May 13, 2005 hearing was adjourned to June 6, 2005. Sergeant Hurley's mother, Valla Hurley, who was living at the Property, claims that she made an appearance at the second hearing to inform the court that Sergeant Hurley was in Iraq. According to Ms. Hurley, Defendants' counsel took her to a conference room and told her that she must vacate the Property and that Defendants would pay her $1,000 if she left voluntarily. Ms. Hurley alleges that Defendants' counsel told her that the matter would be adjourned for 30 days, at which time she could come back and discuss the matter with the judge. Ms. Hurley left the courthouse without appearing before a judge; she was under the impression that a hearing had been rescheduled for 30 days later and that Defendants' counsel would relay this information to the judge.

On June 14, 2005, the court entered a default judgment against Sergeant Hurley. According to Judge Clark, who was presiding over the eviction proceedings:

> [A]t no time during the eviction proceedings do I recall being informed that an individual was present in the courthouse on behalf of James Hurley and claiming to be an occupant of the house . . . As a result that neither Sergeant Hurley nor any other occupants of the house came forward to express their questions and/or concerns, I signed a Default Judgment, which contained the provision that "for a defendant on active military duty, default judgment shall not be entered except as provided by [the SCRA]."

(Dist. Ct. R.E. 43 Ex. 20).

On July 14, 2005, the Deputy Sheriff attempted to execute a Writ of Resolution to remove Plaintiffs and other occupants from the Property but found the house to be totally empty. Plaintiffs allege that they left the Property based on the belief that they would be compensated and out of fear of being forcibly removed. On November 10, 2005, Deutsche Bank sold the Property to a bona fide purchaser for $76,000.

Plaintiffs filed their complaint on May 2, 2007 in the Eastern District of Michigan. Defendants filed their answers, and the court held a Rule 16 scheduling conference on September 20, 2007. Plaintiffs subsequently filed an amended complaint, and Defendants again filed answers. On December 10, 2007, Defendant Orlans filed a motion to dismiss and for partial summary judgment. On February 12, 2008, the district court granted in part and denied in part Orlans' motion to dismiss. On March 3, 2008, Defendant Deutsche Bank filed a motion to change venue, in which Defendant Orlans joined. On April 1, 2008, while the Bank's motion to change venue was pending, Plaintiffs filed their own motion for summary judgment. On April 17, 2008, the court granted Defendants' motion and transferred the case to the Western District of Michigan.

After the transfer, Defendants filed motions for summary judgment, a motion to strike Plaintiffs' expert, a motion for sanctions, and several other motions. On September 30, 2008, the district court ruled on each of these motions, granting in part and denying in part both Plaintiffs' and Defendants' motions for summary judgment. On March 13, 2009, after denying Plaintiffs' motion for reconsideration, the court *sua sponte* reconsidered its September 30, 2008 order. On April 21, 2009, the court denied Defendant Deutsche Bank's motion for reconsideration.

On May 21, 2009, Defendant Orlans filed a motion to compel arbitration. On June 23, 2009, the district court denied the motion, holding that Defendants had waived their right to enforce the arbitration clause by sleeping on their arbitration rights for 26 months while Plaintiffs incurred the costs of this litigation. On July 22, 2009, Defendant Orlans timely filed a notice of appeal. Defendant Deutsche Bank has not joined this appeal.

**DISCUSSION**

We review a district court's denial of a motion to compel arbitration *de novo*. *Albert M. Highly Co. v. N/S Corp.*, 445 F.3d 861, 863 (6th Cir. 2006).

"This Court examines arbitration language in a contract in light of the strong federal policy in favor of arbitration, resolving any doubts as to the parties' intentions in favor of arbitration." *Id.* (citing *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878 (6th Cir. 2002)). Because of the presumption in favor of arbitration under the Federal Arbitration Act,[2] we will not lightly infer a party's waiver of its right to arbitration. *O.J. Distrib, Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 355 (6th Cir. 2003) (quoting *Cotton v. Slone*, 4 F.3d 176, 179 (2d Cir. 1993)). However, a party may waive an agreement to arbitrate by engaging in two courses of conduct: (1) taking actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) "delaying its assertion to such an extent that the opposing party incurs actual prejudice." *Id.* at 356 (quoting *Germany v. River Terminal Ry. Co.*, 477 F.2d 546, 547 (6th Cir. 1973) (per curiam) and citing *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 131 (2d Cir. 1997)); *see also Manasher v. NECC Telecom*, 310 F. App'x 804, 806 (6th Cir. 2009); *Gen. Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat*, 289 F.3d 434, 438 (6th Cir. 2002).

We find that both factors indicating waiver are present in this case. With regard to the first factor, Defendants have taken actions that are completely inconsistent with any reliance on an arbitration agreement. Over the course of more than two years between when Plaintiffs initiated this lawsuit and when Defendants submitted their

---

[2] Section 3 of the Federal Arbitration Act sets forth the presumption in favor of arbitration as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

motion to compel arbitration, Defendants have consistently and actively litigated this action in court. *See Manasher*, 310 F. App'x at 806 (holding that the defendant had waived its right to arbitrate "by actively participating in litigation for almost a year without asserting that it had a right to arbitration"). Defendants have not only responded to actions taken by Plaintiffs, but they have filed multiple dispositive and non-dispositive motions of their own, including motions to dismiss, motions for summary judgment, and a motion to change venue. By filing a motion to change venue, Defendants proactively selected the forum in which they wished to defend against Plaintiffs' claims. As the district court found:

> Although this case has been pending in this district for about fifteen months, it dates back to May 2, 2007, when Plaintiffs filed suit in the Eastern District of Michigan. Thus, it has been pending 26 months, during which time Orlans filed two dispositive motions, joined in Deutsche Bank's motion for change of venue, attended a Rule 16 scheduling conference and a settlement conference, and filed numerous other motions and documents in defense of Plaintiffs' claims. Although Orlans had the mortgage documents since the inception of the lawsuit, it took no action to assert its alleged right to arbitrate until after the Court issued an unfavorable decision in its March 13, 2009, Opinion and Order.

(Dist. Ct. R.E. 189 at 3-4).

In three recent cases, we have held that each defendant waived its right to arbitrate by failing to assert that right in a timely fashion and instead participating in litigation-related activities. In *General Star National Insurance Co. v. Administratia Asigurarilor de Stat*, this Court held that the defendant waived its right to arbitrate after waiting 17 months before attempting to enforce the arbitration clause. 289 F.3d at 438. The defendant was asserting its purported right to arbitrate in the context of moving to set aside the default judgment that had been entered against the defendant for failing to respond to the complaint. In finding that the defendant had waived its right to arbitrate, we noted that "for 17 months, [the defendant] remained idle while [the plaintiff] incurred the costs associated with this action. [The defendant], moreover, sought arbitration only *after* the district court had entered a default judgment against it." *Id.*

In *O.J. Distributing, Inc. v. Hornell Brewing Co.*, this Court held that the defendant waived its right to arbitrate by engaging in negotiations with the plaintiff for approximately 15 months–while at the same time denying the existence of the agreement which contained the arbitration provision–before asserting its right to arbitrate. 340 F.3d at 357. *See also Manasher*, 310 F. App'x at 806 (holding that the defendant had waived its right to arbitrate by engaging in discovery and motion practice for a year before filing a motion to compel arbitration).

In the instant case, Defendants have waited even longer than the defendants in each of those three cases to assert their purported right to arbitrate and have engaged in significantly more dispositive motion practice and litigation-related activities. Likewise, Defendants did not attempt to enforce their arbitration rights until *after* the district court entered an unfavorable decision. *Cf. Rush v. Oppenheimer & Co.*, 779 F.2d 885, 890 (2d Cir. 1985) (holding that the defendant had not waived its arbitration right in part because "[t]his is not an instance in which 'a party sensing an adverse court decision [is, in effect, allowed] a second chance in another forum'").

Defendants encourage us to ignore the governing Sixth Circuit precedent and rely exclusively on the Second Circuit case of *Rush*. According to Defendants, the nature of the case changed on March 13, 2009, when the district court *sua sponte* reconsidered its denial of Plaintiffs' motion for summary judgment, reinstating Plaintiffs' SCRA claims and inferring a private cause of action for punitive damages. Defendants argue that, like in *Rush*, the inclusion of remedies that were previously unavailable altered the scope of the case. However, Defendants mischaracterize the posture and scope of this case. Unlike the claims at issue in *Rush*, Plaintiffs' claims under the SCRA survived Defendants' motion to dismiss and remained in the case until September 30, 2008–after Defendants moved to transfer the case to the Western District of Michigan. Defendants actively litigated this case in two different federal courts for nearly 17 months, while the possibility loomed that they may have to pay punitive damages, without attempting to enforce their arbitration rights. Thus, even if this Court were to look to non-binding Second Circuit law–which arguably conflicts with binding Sixth Circuit precedent–it

would not dictate the result that Defendants seek. Defendants' actions are completely inconsistent with any reliance on an arbitration agreement.

With regard to the second factor, Defendants have delayed asserting their right to arbitrate to such an extent that they have actually prejudiced Plaintiffs. For more than two years before Defendants attempted to compel arbitration, Plaintiffs incurred the costs of active litigation in two federal courts. Plaintiffs have employed four attorneys, undergone extensive discovery, argued four summary judgment motions, and been subjected to a change in venue at Defendants' request. *See Doctor's Assocs.*, 107 F.3d at 131 (recognizing that a party waives the right to arbitrate when it delays invoking that right such that the opposing party incurs "unnecessary delay or expense"). As the district court found:

> To paraphrase *O.J. Distributing*, Orlans slept on its rights for twenty-six months while Plaintiffs incurred costs to pursue their claims in this forum and suffered prejudice. In fact, this case is in its late stages and, but for the parties' agreement to facilitative mediation, would have been set for trial within the next few months. If there were no waiver under these circumstances, it would be difficult to imagine when a waiver might occur.

(Dist. Ct. R.E. 189 at 4).

Accordingly, Defendants took actions inconsistent with any reliance on the waiver provision, and Plaintiffs have suffered actual prejudice as a result of Defendants' delay.

**CONCLUSION**

Because Defendants have waived their right to arbitrate, we **AFFIRM** the district court's order denying Defendants' motion to compel arbitration.