RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0025p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

JOE SOLO; BLEACHTECH LLC, and all others similarly situated,

>*Plaintiffs-Appellees*,

*v.*

UNITED PARCEL SERVICE CO.,

>*Defendant-Appellant*.

No. 17-2244

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:14-cv-12719—Denise Page Hood, Chief District Judge.

Decided and Filed:  January 23, 2020

Before:  STRANCH, DONALD, and LIPEZ, Circuit Judges.*

_____

## COUNSEL

**ON BRIEF:**  Jill M. Wheaton, DYKEMA GOSSETT PLLC, Ann Arbor, Michigan, Deanne E. Maynard, Joseph R. Palmore, Bryan J. Leitch, MORRISON & FOERSTER LLP, Washington, D.C., for Appellant.  Andrew J. McGuiness, ANDREW J. MCGUINNESS, ESQ., Ann Arbor, Michigan, Daniel R. Karon, KARON LLC, Cleveland, Ohio, Sanford P. Dumain, MILBERG LLP, New York, New York, for Appellees.

---

*The Honorable Kermit V. Lipez, Circuit Judge for the United States Court of Appeals for the First Circuit, sitting by designation.

——————————

**OPINION**

——————————

JANE B. STRANCH, Circuit Judge.  Plaintiffs Joe Solo and BleachTech LLC sued Defendant United Parcel Service Co. (UPS) in July 2014 alleging that it had systematically overcharged customers for insurance on their shipments.  The first time this case was appealed, we held that the contract governing the shipments was "at least ambiguous" as to the contested charge, *Solo v. UPS Co.*, 819 F.3d 788, 796 (6th Cir. 2016), and reversed the order granting UPS's motion to dismiss.  After remand and several months of discovery, UPS moved to compel arbitration, citing an arbitration provision contained in a contract effective after the contested shipments occurred.  For the reasons explained below, we **AFFIRM** the district court's denial of the motion to compel arbitration.

## I. BACKGROUND

Both Solo and BleachTech purchased liability insurance for valuable packages shipped through UPS before December 30, 2013.  The price of that insurance, called "declared value coverage," was set by the contract governing the shipments, the UPS Tariff/Terms and Conditions of Service (the Original UPS Terms).[1]  The contract lays out the rates as follows:

| Description | Fee | |
|---|---|---|
| **Package** | **Package** | |
| - UPS's liability for loss or damage to a shipment is limited to $100.00 without a declaration of value. | - $0.00-$100.00 | $0.00 |
| - The maximum declared value is $50,000.00 per package. UPS's liability for loss or damage can be increased up to $50,000.00 (subject to terms and conditions) by making a declaration of value for an additional charge. | - $100.01-$50,000.00 for each $100.00 (or portion of $100.00) of the total value declared | $0.85 |
| | - Minimum | $2.55 |
| - Declared Value charges for freight collect and third-party shipments may be billed to your shipper account. | | |
| - Refer to ups.com/terms for more information. | | |

(R. 1, Compl., PageID 137)  According to Solo and BleachTech, this language plainly states that there is no additional charge for the first $100 of coverage whether or not a shipper purchases

—————————————————

[1]For ease of reference, we refer to all pre-December 30, 2013 iterations as the Original UPS Terms and all post-December 30, 2013 iterations as the Amended UPS Terms.  The provisions of the Original UPS Terms that are relevant to our analysis remained consistent from January 2009 to December 2013.

additional declared value coverage.  But when Solo and BleachTech shipped their packages, they were charged $0.85 for each hundred-dollar increment, including the first.

Solo and BleachTech sued UPS on behalf of a proposed class of similarly situated UPS customers.  UPS moved to dismiss the suit in its entirety because all the claims "require a misinterpretation" of the Terms.  UPS argued that the controlling phrase was "total value declared" and that "total" value necessarily includes the first $100.

The final paragraph of that motion stated that UPS "reserves its right to move to compel arbitration and does not by this motion in any way waive this contractual right."  UPS referenced an arbitration clause found in the amended contract that became effective December 30, 2013 (the Amended UPS Terms)—after the shipments at issue in this suit were mailed, though BleachTech shipped packages with UPS under the amended terms post-December 30, 2013.  The Amended UPS Terms, unlike the Original UPS Terms in use at the time of the shipments, provide that "any controversy or claim, whether at law or equity, arising out of or related to the provision of services by UPS, regardless of the date of accrual of such dispute, shall be resolved in its entirety by individual (not class-wide nor collective) binding arbitration."  UPS's motion to dismiss stated that because the Complaint alleges shipments only prior to the effective date of the Amended UPS Terms, "UPS does not have sufficient information at this time to know whether its arbitration clause could apply in this action."

The district court granted the motion to dismiss, agreeing with UPS that the first $100 of declared value is part of the total value declared under the plain meaning of that term, and accordingly, an $0.85 charge applies to that declared value under the contract.  Solo and BleachTech appealed.  We reversed, relying on the complaint's allegations that UPS routinely credits customers who complain about the overcharge and so "itself acknowledges the validity of Solo's reading of the contractual provision." *Solo*, 819 F.3d at 795–96.  We held that the provision was "at least ambiguous," *id.* at 796, and remanded for further proceedings.

On remand, UPS filed its answer, raising the obligation to arbitrate as its first affirmative defense, and sought limited discovery focused on arbitration.  The district court appears to have rejected the proposed limitation, and after six months of full discovery, UPS moved to compel

arbitration. The district court denied the motion on the basis that UPS "waived its right to arbitrate by taking actions inconsistent with reliance on the arbitration provision <u>and</u> delaying its assertion of the need to arbitrate, to the actual prejudice of Plaintiffs." UPS appeals.

## II. ANALYSIS

This case, now in its fifth year of litigation, makes its second appearance in this court. Having already resolved a merits-based issue about the ambiguity of the contractual terms at issue, *see id.*, we now confront an issue that normally precedes the merits: whether the dispute should be resolved via arbitration.

Although an order declining to compel arbitration does not end a case, we have jurisdiction to hear an appeal of such a denial pursuant to the Federal Arbitration Act (FAA). *See* 9 U.S.C. § 16(a). The FAA manifests "a liberal federal policy favoring arbitration agreements." *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 416 (6th Cir. 2011) (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)). Prompt appellate review of orders declining to compel arbitration gives effect to that policy and to the "two goals of the [FAA]—enforcement of private agreements and encouragement of efficient and speedy dispute resolution." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985).

"Because arbitration agreements are fundamentally contracts, we review the enforceability of an arbitration agreement according to the applicable state law of contract formation." *Hergenreder*, 656 F.3d at 416 (quoting *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007)).[2] As with other contract disputes, we review the district court's decision de novo. *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1014 (6th Cir. 2003). And "[i]n this endeavor, 'as with any other contract, the parties' intentions

---

[2]In the prior appeal, "the parties agree[d] that the district court correctly applied Michigan law to the state claims"; we therefore analyzed the contract and unjust enrichment claims under Michigan law. *Solo*, 819 F.3d at 794–96. Though UPS now asserts that we should apply Ohio law to BleachTech's contract claim and California law to Solo's, it argued in the last appeal that "[t]he district court correctly applied Michigan law—the law of the forum state—to the contract claim." Appellee Brief at 21 n.9, *Solo*, 819 F.3d 788 (No. 15-1426) (D.E. 26). Having previously conceded the issue, UPS may not reverse course now. *See Meridia Prods. Liab. Litig. v. Abbott Labs.*, 447 F.3d 861, 865 (6th Cir. 2006) (finding a choice-of-law argument waived where a party both "fail[ed] to challenge the [district] court's choice of law" and "affirmatively argued that the court need not engage in a choice-of-law analysis"). We therefore continue to apply Michigan law.

control.'" *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). To find that the parties intended to resolve this dispute in arbitration, we must confirm "that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of the agreement." *Hergenreder*, 656 F.3d at 415–16 (quoting *Mazera v. Varsity Ford Mgmt. Servs., LLC*, 565 F.3d 997, 1001 (6th Cir. 2009)).

### A.        The Arbitration Agreement

The arbitration agreement UPS invokes is not found in the contract in place during the period when Solo and BleachTech assert they were charged the improper fee. The Original UPS Terms describe a claim-filing process that serves as a prerequisite to seeking "any legal or equitable relief whatsoever," but the terms do not mention arbitration. The Amended UPS Terms, enacted after the relevant shipments, require that "any controversy or claim, whether at law or equity, arising out of or related to the provision of services by UPS, regardless of the date of accrual of such dispute, shall be resolved in its entirety by individual (not class-wide nor collective) binding arbitration." The question presented is, did the parties intend the arbitration provision in the Amended UPS Terms to govern preexisting disputes, or only disputes arising during that contractual period?[3]

We have recognized that a broadly worded arbitration clause may govern disputes predating its enactment. For example, when a contract requires the parties to arbitrate "any dispute or claim arising from or in connection with this agreement *or the services provided* by [the plaintiff]," the natural reading is that "the language covers more than claims arising 'out of the agreement'" and so applies outside the agreement's timeframe. *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 650 (6th Cir. 2008) (quoting the contract at issue) (quoting *Kristian v. Comcast Corp.*, 446 F.3d 25, 33 (1st Cir. 2006)).

But we do not imply retroactivity where it is not contemplated in the contractual language. Thus, when a contract required arbitration of "all employment-related disputes . . .

---

[3]Solo additionally argues that he was not subject to the arbitration agreement because the UPS terms apply only to "shippers," and not individual consumers like Solo. For the reasons set forth below, we need not reach this argument.

which . . . arise between [the parties]," the use of present- and future-tense language led us to conclude that "the parties signed this agreement to head off future lawsuits, not to cut off existing ones." *Russell v. Citigroup, Inc.*, 748 F.3d 677, 679–80 (6th Cir. 2014) (quoting the contract at issue). The presumption of arbitrability, moreover, cannot bridge a textual gap. "While ambiguities in the language of the agreement should be resolved in favor of arbitration[,] . . . we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *GGNSC Louisville Hillcreek, LLC v. Est. of Bramer*, 932 F.3d 480, 485 (6th Cir. 2019) (quoting *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002)). In other words, courts may not "use policy considerations as a substitute for party agreement," *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 303 (2010), because the Supreme Court "has made consent the cornerstone of arbitration," *GGNSC*, 932 F.3d at 485.

To determine whether the parties intended the Amended UPS Terms to have retroactive effect, we construe the two "contracts as a whole, giving harmonious effect, if possible, to each word and phrase." *Wilkie v. Auto-Owners Ins. Co.*, 664 N.W.2d 776, 781 n.11 (Mich. 2003). Here, the critical language appears in the introduction to both versions of the Terms: "In tendering a shipment for service, the shipper agrees that the version of the Terms . . . in effect at the time of shipping will apply to the shipment and its transportation." This clear instruction answers the question before us: the parties intended all disputes about shipping to be resolved according to the "version of the Terms . . . in effect at the time of shipping," not an older or newer version. *See Sec. Watch, Inc. v. Sentinel Sys.*, 176 F.3d 369, 374 (6th Cir. 1999) ("Given the fact that the arbitration provision in the present case arises in a later contract, much more is needed to infer an intention to apply the provision to previous contracts.").

Consider, as an example, a customer who ships a package on the final day the Amended UPS Terms are in effect. That package arrives damaged three days later; she attempts to sue a year after that. Assuming annual contracts, she shipped under one set of terms, her claim accrued under another, and she began the suit under a third. The contract provides a clear guide for how to proceed. The Amended UPS Terms that were "in effect at the time of shipping" govern her claim, and "regardless of the date of accrual," she must arbitrate her suit under those

terms.  If she had sent her shipment a year earlier, just *before* the Amended UPS Terms went into effect (like Solo and BleachTech), the same analysis would apply.  The version "in effect at the time of shipping" would still control, and she would not be obligated to arbitrate.  As we have recognized before, parties entering into a series of contracts can and do change dispute resolution mechanisms over time, opting for litigation under one contract and arbitration under another. *See id.* at 373.

In response, UPS first contends that the contractual focus on the version "in effect at the time of shipping" applies only "to the shipment and its transportation"—not to dispute resolution.　But the underlying issue is whether UPS charged the correct price for the *transportation* of Solo and BleachTech's insured *shipments*.  This provision simply clarifies that the UPS Terms do not govern matters unrelated to shipping and transportation, such as an employment dispute within UPS or an accident caused by UPS drivers.

Next, UPS argues that the Original UPS Terms contemplate modifications.  Specifically, the Terms "comprise the complete and exclusive agreement of the parties, except as modified by any existing or future written agreement between the parties."  But we have already rejected the argument that a boilerplate merger clause renders an arbitration provision from one contract applicable to another. *See Sec. Watch*, 176 F.3d at 372.  And while subsequent modifications to the operative contract might be relevant if a new contract entirely subsumes the original, *see Highlands Wellmont Health Network v. John Deere Health Plan*, 350 F.3d 568, 575 (6th Cir. 2003), the Amended UPS Terms reiterate that the version in effect at the time of shipping controls.

The dispositive issue here is not whether the Amended UPS Terms amount to "a valid agreement to arbitrate"; it is whether shipments that predate those Terms "fall[] within the substantive scope of the agreement." *Hergenreder*, 656 F.3d at 415–16 (quoting *Mazera*, 565 F.3d at 1001).  Both contracts direct that the version of the Terms "in effect at the time of shipping" governs.  That instruction amounts to "forceful evidence" that the parties did not agree to arbitrate disputes that predated the Amended UPS Terms. *See Russell*, 748 F.3d at 681 (quoting *Watson Wyatt*, 513 F.3d at 650).  "[T]he FAA does not require parties to arbitrate when

they have not agreed to do so." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989). They have not agreed to do so here.

**B.　　Waiver**

Even if the scope of the arbitration agreement in the Amended UPS Terms were ambiguous, the district court properly concluded that UPS waived its right to arbitrate.

As discussed above, the FAA's "liberal federal policy favoring arbitration agreements," *Hergenreder*, 656 F.3d at 416 (quoting *Javitch*, 315 F.3d at 624), encourages "efficient and speedy dispute resolution," *Dean Witter Reynolds*, 470 U.S. at 221. Because a valid arbitration provision avoids court process, courts resolve arbitration disputes with dispatch, including via interlocutory appeals such as this one. But the benefits of "efficient and speedy" arbitration are lost if a party seeks arbitration only after insisting upon court process. Thus, although "we will not lightly infer a party's waiver of its right to arbitration," we may find waiver if a party (1) "tak[es] actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) 'delay[s] its assertion to such an extent that the opposing party incurs actual prejudice.'" *Hurley v. Deutsche Bank Tr. Co. Ams.*, 610 F.3d 334, 338 (6th Cir. 2010) (quoting *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 356 (6th Cir. 2003)).

We begin with the first prong—action that is inconsistent with *reliance on* arbitration—and UPS's motion to dismiss. "Not every motion to dismiss is inconsistent with the right to arbitration." *Hooper v. Advance Am., Cash Advance Ctrs. of Mo., Inc.*, 589 F.3d 917, 922 (8th Cir. 2009) (collecting cases). For example, the Eighth Circuit has held that a motion to dismiss raising "jurisdictional and quasi-jurisdictional grounds" but seeking "no action with respect to the merits of the case" is not inconsistent with later seeking arbitration. *Dumont v. Sask. Gov't Ins.*, 258 F.3d 880, 886–87 (8th Cir. 2001). Similarly, where a complaint asserts a mix of arbitrable and nonarbitrable claims, "the portions of the motion [to dismiss] addressed to nonarbitrable claims do not constitute a waiver." *Sweater Bee by Banff, Ltd. v. Manhattan Indus.*, 754 F.2d 457, 463 (2d Cir. 1985). On the other hand, a motion to dismiss that seeks "a decision on the merits" and "an immediate and total victory in the parties' dispute" is entirely inconsistent with later requesting that those same merits questions be resolved in arbitration.

*Hooper*, 589 F.3d at 922.  A party may not use a motion to dismiss "to see how the case [is] going in federal district court," *id.* (quoting *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995)), while holding arbitration in reserve for "a second chance in another forum," *Hurley*, 610 F.3d at 339 (quoting *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 890 (2d Cir. 1985)).

UPS's motion to dismiss was thoroughly enmeshed in the merits.  It sought dismissal of all claims on the basis that Solo and BleachTech misinterpreted contractual language.  By asking the court to decide the meaning of the key contractual language, UPS sought "immediate and total victory."  *Hooper*, 589 F.3d at 922.  UPS had good reason to think this strategy was sound.  The same district court had just accepted UPS's contractual argument in a virtually identical case, *see Sivak v. United Parcel Serv. Co.*, 28 F. Supp. 3d 701, 712–13 (E.D. Mich. 2014), and it then did so here.

Only after we reversed that favorable ruling did UPS change course, filing an answer invoking arbitration and seeking to rely on the arbitration agreement to limit discovery to arbitration-related issues.  Had that been UPS's course of conduct from the outset of the litigation, it likely would not have waived its right to arbitrate.  *See Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 718 (6th Cir. 2012) (approving the practice of raising arbitration in the answer).  But by that time, UPS had already spent two years vigorously litigating the merits of the claims in the district court and on appeal.  By waiting to "attempt to enforce [its] arbitration rights until *after* the [appellate] court entered an unfavorable decision" on its merits arguments, *Hurley*, 610 F.3d at 339, UPS's actions were inconsistent with reliance on an arbitration agreement.

UPS responds by highlighting the statement in its first motion to dismiss that UPS "reserves its right to move to compel arbitration and does not by this motion in any way waive this contractual right."  But "[a] statement by a party that it has a right to arbitration in pleadings or motions is not enough to defeat a claim of waiver."  *Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016).  UPS also argues that, in some circumstances, a clearly annunciated, well-supported reservation that is otherwise consistent with a party's litigating position might forestall a finding of waiver.  But UPS did not adopt an internally consistent position.  Rather, it

simultaneously asked the district court to resolve the merits of all claims in its favor and reserved the right to submit those same claims to an arbitrator. "A party cannot keep its right to demand arbitration in reserve indefinitely while it pursues a decision on the merits before the district court." *MC Asset Recovery LLC v. Castex Energy, Inc.* (*In re Mirant Corp.*), 613 F.3d 584, 591 (5th Cir. 2010).

Similarly, a finding of waiver might be inappropriate if the party belatedly seeking arbitration was unaware of information rendering a claim arbitrable. *See Keys v. Pace*, 99 N.W.2d 547, 552–53 (Mich. 1959) ("[A] litigant cannot be held estopped to assert a defense, or to have waived his right thereto, because of facts he does not know, unless, as a matter of judicial policy, we are ready to say he 'should' know them."). UPS argues that it fits within this proposition, pointing to the notation in its motion to dismiss that the Complaint alleges shipments only prior to the effective date of the Amended UPS Terms, so "UPS does not have sufficient information at this time to know whether its arbitration clause could apply in this action."

When evaluated in light of the arbitration arguments UPS now advances, this assertion rings hollow. UPS submits that BleachTech is subject to arbitration because it shipped packages and clicked assent during the period of the Amended UPS Terms. But UPS's own declaration explains that all that was required to make that determination is BleachTech's account number, and the record reflects (without contradiction from UPS) that UPS knew that account number before this lawsuit even began. As to Solo, UPS argues that he is bound by the Amended UPS Terms because he seeks to enforce other portions of the same contract. Once again, UPS was aware of the basis of Solo's claim from the moment the complaint was filed. UPS knew or should have known all the information necessary to advance these arguments before it filed its motion to dismiss. Its continued pursuit of legal victory based on the merits is inconsistent with reliance on an arbitration agreement.

We turn next to the prejudice prong. We have previously found prejudice where, "in addition to an eight-month delay and expenses involved with numerous scheduling motions and court-supervised settlement discussions, plaintiffs also engaged in discovery." *Johnson Assocs.*, 680 F.3d at 720; *see also Hurley*, 610 F.3d at 340 (finding prejudice based on two years of active

litigation, including extensive discovery and filing of multiple summary judgment motions). In contrast, we have not found prejudice based on actions such as refusal to arbitrate "substantively weak" claims *before* the commencement of litigation, where arbitration was sought in the "second substantive submission in the litigation." *Shy v. Navistar Int'l Corp*, 781 F.3d 820, 829–30 (6th Cir. 2015) (noting that the first litigation submission was opposing a motion to intervene that did not address the validity of the parties' claim). Here, the arbitration motion was filed over two years into the suit, after the plaintiffs incurred the expenses of defending against a merits-based motion to dismiss, appealing that decision, and then engaging in many months of discovery. Even if we accepted UPS's argument that some of the discovery-related expenses were due to the plaintiffs' refusal to limit discovery, UPS received the necessary admissions about shipments pursuant to the Amended UPS Terms in June 2016. UPS then allowed another five months of discovery to pass before moving to invoke its right to arbitration. All together, these circumstances amount to actual prejudice.

As a final matter, UPS asserts that the waiver ruling cannot be extended to members of the putative class. The district court declined to answer this question because UPS conceded that it failed to argue the point until after the district court issued its decision. Because this question was not presented to or decided by the district court, we decline to consider it in the first instance. *See United States v. Huntington Nat'l Bank*, 574 F.3d 329, 331–32 (6th Cir. 2009) ("[A]bsent a legitimate excuse, an argument raised for the first time in a motion for reconsideration at the district court generally will be forfeited.").

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the decision of the district court and **REMAND** for further proceedings consistent with this opinion.