RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 24a0065p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

JASON SCHWEBKE,

*Plaintiff-Appellee*,

*v.*

UNITED WHOLESALE MORTGAGE LLC dba UWM,
a Michigan Corporation,

*Defendant-Appellant*.

Nos. 23-1507/1551

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:21-cv-10154—Denise Page Hood, District Judge.

Argued:  January 25, 2024

Decided and Filed:  March 27, 2024

Before:  GRIFFIN, BUSH, and LARSEN, Circuit Judges.

_____

## COUNSEL

_____

**ARGUED:**  Matthew T. Nelson, WARNER NORCROSS + JUDD LLP, Grand Rapids, Michigan, for Appellant.  Molly Savage, DEBORAH GORDON LAW, Bloomfield Hills, Michigan, for Appellee.  **ON BRIEF:**  Matthew T. Nelson, Andrea J. Bernard, Charles R. Quigg, WARNER NORCROSS + JUDD LLP, Grand Rapids, Michigan, Paul D. Hudson, MILLER, CANFIELD, PADDOCK AND STONE, P.L.C., Grand Rapids, Michigan, for Appellant.  Molly Savage, Deborah L. Gordon, Elizabeth Marzotto Taylor, Sarah Gordon Thomas, DEBORAH GORDON LAW, Bloomfield Hills, Michigan, for Appellee.

_____

## OPINION

_____

LARSEN, Circuit Judge.  Jason Schwebke sued his employer, United Wholesale Mortgage (UWM), alleging disability discrimination under state and federal law.  For seven

months, UWM participated in extensive discovery—producing tens of thousands of pages of documents, taking and defending depositions, and issuing third-party subpoenas—without ever mentioning arbitration. Then, with discovery nearly complete, UWM moved to compel arbitration. The district court denied that motion because UWM implicitly waived its arbitration right. We AFFIRM.

I.

Schwebke, who is deaf, was a software developer at UWM. In that role, he was required to participate in multiple team meetings each week. To meaningfully participate in those meetings, he requested on-site sign-language interpreters. Schwebke says that UWM declined to provide interpreters and asked him to use lower-cost alternatives. Those did not work well for Schwebke. UWM fired him in May 2020.

On January 22, 2021, Schwebke sued UWM. He claimed retaliation and failure to accommodate under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and retaliation and discrimination under the Michigan Persons with Disabilities Civil Rights Act, Mich. Comp. Laws § 37.1101 *et seq*.

The parties' employment relationship was governed by an employment agreement. That agreement contained an arbitration clause requiring the parties to submit covered claims to binding arbitration. The parties agree that Schwebke's claims are covered. But UWM did not raise the arbitration clause in its February 16, 2021, answer to Schwebke's complaint, although it did raise other defenses. UWM first raised the arbitration clause on August 30, 2021, when it filed a motion to dismiss or, in the alternative, to stay proceedings and compel arbitration. UWM's counsel told the district court that UWM had not raised the arbitration clause earlier "because [UWM's counsel] didn't know that there was an arbitration clause" in the employment agreement. R. 56, Mot. Hr'g Tr., PageID 2424.

In the intervening six-and-a-half months, the parties engaged in extensive discovery. First, the parties participated in a discovery conference. Second, UWM served interrogatories and requests for production. Third, the parties filed a joint discovery plan pursuant to Federal Rule of Civil Procedure 26(f). That plan had a provision addressing alternative dispute

resolution, but it made no reference to the arbitration clause.  Fourth, UWM produced tens of thousands of pages of documents in response to Schwebke's discovery requests.  Fifth, UWM issued fourteen third-party subpoenas for education and employment records.  Sixth, UWM produced witnesses for deposition and participated in those depositions.  Seventh, UWM took Schwebke's and a third-party witness's depositions.  Eighth, UWM filed its witness list and agreed to an extension of the discovery deadline.

The court-ordered discovery deadline was August 26, 2021, but the parties agreed to extend the deadline to accommodate a few more depositions.  UWM then filed its motion to dismiss or, in the alternative, to stay proceedings and compel arbitration on August 30, 2021. After filing the motion, UWM produced three more witnesses for deposition, served two more third-party subpoenas, and produced documents in response to Schwebke's discovery requests. Schwebke moved for summary judgment on November 16, 2021.

The district court held a hearing on UWM's motion on December 1, 2021.  After the hearing, the Supreme Court decided *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), which addressed arbitration waiver.  *Id.* at 417.  The parties filed supplemental briefs in response to the decision.  The district court, having considered those briefs, denied UWM's motion.  The district court reasoned that UWM implicitly waived its right to compel arbitration because its conduct was completely inconsistent with reliance on its arbitration right.  UWM appeals.

II.

We review the denial of a motion to compel arbitration de novo.  *Borror Prop. Mgmt., LLC v. Oro Karric N., LLC*, 979 F.3d 491, 494 (6th Cir. 2020).  When the district court denies the motion based on waiver, we review the underlying factual determinations for clear error and then decide de novo whether those facts constitute waiver.  *See Sandler v. All Acquisition Corp.*, 954 F.2d 382, 384–85 (6th Cir. 1992); *White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334, 338 (3d Cir. 2023).

A.

This case asks us to decide when a party has waived its contractual right to arbitrate by participating in litigation.  Until recently, federal courts, including this one, held that a party who participates extensively in litigation has not waived its right to arbitrate unless "its conduct has prejudiced the other side."  *Morgan*, 596 U.S. at 414; *see O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 356 (6th Cir. 2003).  That prejudice requirement was thought to flow from the Federal Arbitration Act's "policy favoring arbitration."  *Morgan*, 596 U.S. at 414.  But in *Morgan*, the Supreme Court abrogated the prejudice prong of the analysis.  "The federal policy is about treating arbitration contracts like all others, not about fostering arbitration."  *Id.* at 418.  So courts asking whether a party has waived a right to arbitrate should not make harm to others a prerequisite.  Instead, they should apply ordinary waiver rules, looking for the "intentional relinquishment or abandonment of a known right."  *Id.* at 417 (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)).[1]

*Morgan* arose out of the Eighth Circuit.  There, under pre-*Morgan* precedent, a party waived its right to arbitrate when it:  (1) knew of the right; (2) acted inconsistently with the right; and (3) prejudiced the other party through its inconsistent action.  *Id.* at 415.  *Morgan* held that the Eighth Circuit could not "condition a waiver of the right to arbitrate on a showing of prejudice."  *Id.* at 417.  But the Court said that, on remand, the Eighth Circuit could apply its existing waiver test stripped of the prejudice requirement.  *Id.* at 419.

Before *Morgan*, this circuit applied a similar rule.  We held that a "party may waive an agreement to arbitrate" when it both:  "(1) tak[es] actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) delay[s] its assertion to such an extent that the opposing party incurs actual prejudice."  *Hurley v. Deutsche Bank Tr. Co. Americas*, 610 F.3d 334, 338 (6th Cir. 2010) (internal quotation marks and citation omitted).

---

[1]The Supreme Court declined to address whether "waiver," as opposed to "forfeiture, estoppel, laches or procedural timeliness," is the right analytical framework to assess whether a "party's litigation conduct results in the loss of a contractual right to arbitrate."  *Morgan*, 596 U.S. at 416.  Noting that the Courts of Appeals have generally resolved such cases "using the terminology of waiver," the Court "assume[d] without deciding they are right to do so."  *Id.* at 416–17.  The parties in this case do not challenge that assumption, so we continue to use the language of waiver contained in our pre-*Morgan* caselaw.

We have not yet had an opportunity to consider *Morgan*'s effect on our rule. At a minimum, *Morgan* eliminated the prejudice requirement. *See* 596 U.S. at 417. In this case, we need not decide whether *Morgan* did more than that because the parties agree that, once stripped of its prejudice requirement, our pre-*Morgan* caselaw remains intact. Given this posture, we assume without deciding that our precedent asking whether a party's actions are "completely inconsistent" with reliance on arbitration survives *Morgan*.

B.

We have decided one case very similar to this one: *Johnson Associates Corp. v. HL Operating Corp.*, 680 F.3d 713 (6th Cir. 2012). That case largely determines the outcome here. The defendant in *Johnson Associates*: (1) waited eight months before moving to compel arbitration; (2) did not raise arbitration as an affirmative defense; (3) asserted other affirmative defenses; (4) asserted a counterclaim; (5) participated in a case management conference; (6) participated in settlement discussions facilitated by a magistrate judge; (7) filed a case management order; (8) served interrogatories and requested documents; (9) noticed eight depositions; and (10) agreed to extend the discovery deadline. *Id.* at 715–16. We held that the defendant's conduct "considered together" was "completely inconsistent" with reliance on arbitration. *Id.* at 719. In making that determination, we emphasized that the defendant "failed to raise arbitration in its answer," "asserted a counterclaim," "and actively scheduled and requested discovery, including depositions, rather than moving to compel arbitration following the end of formal settlement discussions." *Id.* at 718–19.

UWM engaged in conduct similar to that of the defendant in *Johnson Associates*. UWM: (1) waited seven months before moving to compel arbitration; (2) did not raise arbitration as an affirmative defense; (3) raised other affirmative defenses; (4) participated in a discovery conference; (5) filed a joint discovery plan; (6) served interrogatories and requested documents; (7) noticed two depositions; and (8) agreed to an extension of the discovery deadline.

Furthermore, UWM engaged in conduct beyond what occurred in *Johnson Associates*. In *Johnson Associates*, we found it significant that the defendant had "actively scheduled and requested discovery." *Id.* at 718. Yet in that case, "no discovery responses had been exchanged

and no depositions had been taken." *Johnson Assocs. Corp. v. HL Operating Corp.*, 2010 WL 4942788, at *1 (M.D. Tenn. Nov. 30, 2010), *aff'd*, 680 F.3d 713. Here, far more extensive discovery was *nearly complete*. UWM deposed two witnesses, produced three witnesses for deposition and participated in those depositions, and produced tens of thousands of pages of documents in response to several discovery requests. UWM also issued fourteen third-party subpoenas, filed a witness list, and entered a joint discovery plan that addressed alternative dispute resolution without mentioning arbitration.

UWM argues that several of these actions are insignificant. First, UWM argues that its responsive discovery should be given little weight because it was merely an attempt to meet the issues raised in litigation. We have said that "attempts to meet all issues raised in litigation," without more, are not sufficient to support a finding of waiver. *See Germany v. River Terminal Ry. Co.*, 477 F.2d 546, 547 (6th Cir. 1973) (per curiam). UWM is right that responsive conduct is less inconsistent with reliance on arbitration than affirmative conduct. But that does not mean that producing discovery without protest or reference to the arbitration clause is irrelevant to the totality-of-the-circumstances analysis. Second, UWM argues that its affirmative discovery should also be discounted because "arbitration also involves discovery." Appellant Br. at 24. That includes third-party subpoenas, UWM argues, because it would have had access to such subpoenas in arbitration, enforceable either in federal court under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, or in state court under Michigan's Uniform Arbitration Act, Mich. Comp. Laws § 691.1681 *et seq.* We find that argument unpersuasive. The parties dispute the availability of enforcement in federal or state court for subpoenas issued by an arbitrator. And regardless of whether such enforcement is available, the fact that arbitration may also involve subpoenas and other forms of discovery does not change the fact that UWM requested discovery while the case was in federal court, invoking the power of that court under the Federal Rules of Civil Procedure. That conduct, we held in *Johnson Associates*, suggests an intent not to enforce its arbitration clause. *See* 680 F.3d at 719.

To be sure, this case is missing some conduct present in *Johnson Associates*. UWM argues that the "[m]ost notabl[e]" distinction between this case and *Johnson Associates* is that the defendant in *Johnson Associates* filed a counterclaim, whereas UWM did not. Appellant Br.

at 20. That difference matters, in UWM's view, because UWM sees the "hallmark of implied waivers [a]s at least some request for affirmative relief," and UWM characterizes the filing of a counterclaim as such an affirmative request. *Id.* at 25–28. UWM is right that in most of our cases finding arbitration waiver, there has been an affirmative request for relief, such as the filing of a dispositive motion. *See, e.g.*, *Solo v. United Parcel Serv. Co.*, 947 F.3d 968, 975 (6th Cir. 2020); *Gunn v. NPC Int'l, Inc.*, 625 F. App'x 261, 265 (6th Cir. 2015); *Hurley*, 610 F.3d at 339. But *Johnson Associates* makes clear that the waiver analysis rests on the totality of the circumstances—not on any bright-line rule. *See* 680 F.3d at 719. And, in any event, there are meaningful differences between dispositive motions and counterclaims. A dispositive motion affirmatively asks the district court to exercise power and decide an issue. A counterclaim, while adding a claim into existing litigation, affirmatively requests relief only in the broadest sense. Moreover, the extent to which asserting a counterclaim is inconsistent with arbitration depends, in part, on whether the counterclaim is permissive or compulsory. In the case of a permissive counterclaim, the party is willfully expanding the scope of litigation. In the case of a compulsory counterclaim, the party is required to respond to the litigation or waive the right to bring that claim. In *Johnson Associates*, the counterclaim was compulsory. *See* R. 1, Complaint, PageID 2–5, 2010 WL 4942788; Fed. R. Civ. P. 13(a). As discussed above, responsive conduct is less relevant to the analysis than affirmative conduct. *See Germany*, 477 F.2d at 547. The compulsory counterclaim's presence in *Johnson Associates* does not meaningfully distinguish that case from this one.

UWM also notes that the defendant in *Johnson Associates*, unlike UWM, participated in settlement discussions facilitated by a magistrate judge. 680 F.3d at 715. That conduct was not one of the factors emphasized in *Johnson Associates*, *see id.* at 719, and we have been reluctant to infer waiver based on settlement-related activities, *cf. Borror Prop. Mgmt.*, 979 F.3d at 496 (applying this principle to pre-litigation settlement correspondence). Nor does participation in magistrate-judge-facilitated settlement discussions involve the district court acting *as* a district court, which would be more relevant to the waiver analysis. *Cf. Solo*, 947 F.3d at 975. The absence of settlement discussions facilitated by a magistrate judge does little to distinguish this case from *Johnson Associates*.

Finally, UWM suggests that its conduct does not constitute waiver because its failure to raise arbitration earlier was a mistake. UWM failed to raise the arbitration clause earlier because its counsel was unaware of the clause. But UWM concedes that it had "imputed knowledge" of the employment agreement, Reply Br. at 20, which it produced in its first set of discovery documents. While UWM's conduct does not suggest an attempt to secure a "tactical advantage," which would further support a finding of waiver, neither can counsel's failure to read the employment agreement be attributed to an "otherwise excusable purpose." *Gunn*, 625 F. App'x at 265. UWM's mistake does not prevent us from finding waiver.

UWM participated in extensive discovery—producing tens of thousands of pages of documents, taking and defending depositions, and issuing third-party subpoenas—without ever mentioning arbitration. That discovery was nearly complete when, seven months into the case, UWM moved to compel arbitration. Under our precedent, UWM implicitly waived its right to compel arbitration because its conduct was completely inconsistent with reliance on its arbitration right.

\* \* \*

We AFFIRM.