RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 25a0250p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

JOHN H. SCHNATTER,

*Plaintiff-Appellee*,

*v.*

247 GROUP, LLC, dba Laundry Service,

*Defendant-Appellant*.

> No. 24-5916

Appeal from the United States District Court for the Western District of Kentucky at Louisville.
No. 3:20-cv-00003—Benjamin J. Beaton, District Judge.

Argued: July 30, 2025

Decided and Filed: September 10, 2025

Before: CLAY, GILMAN, and BLOOMEKATZ, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Michael P. Abate, KAPLAN, JOHNSON, ABATE & BIRD, LLP, Louisville, Kentucky, for Appellant. Dennis D. Murrell, GRAY ICE HIGDON, PLLC, Louisville, Kentucky, for Appellee. **ON BRIEF:** Michael P. Abate, Burt A. (Chuck) Stinson, KAPLAN, JOHNSON, ABATE & BIRD, LLP, Louisville, Kentucky, Bert H. Deixler, Patrick J. Somers, David Freenock, KENDALL BRILL & KELLY LLP, Los Angeles, California, for Appellant. Dennis D. Murrell, Elisabeth S. Gray, Augustus S. Herbert, M. Katherine Ison, Jason H. Raff, GRAY ICE HIGDON, PLLC, Louisville, Kentucky, for Appellee.

_____

## OPINION

_____

BLOOMEKATZ, Circuit Judge. John Schnatter is the founder and former CEO of Papa John's, a pizza company. He accused his company's former public-relations firm, Laundry

Service, of leaking damaging information about him to the press, and brought this lawsuit, claiming that the alleged leak violated the parties' nondisclosure agreement. Laundry Service denied the allegation, and the parties spent the next four years litigating the dispute in federal court. Finally, after Laundry Service failed to win on the merits, it moved to compel arbitration under the Federal Arbitration Act (FAA), 9 U.S.C. § 4. The district court denied the motion. It concluded, after a bench trial, that Schnatter and Laundry Service had entered an enforceable nondisclosure agreement containing an arbitration provision that bound both parties. Despite this contract, however, the district court held that Laundry Service had lost its right to arbitrate by litigating extensively in federal court before moving to compel.

In this interlocutory appeal, Laundry Service challenges the district court's rulings on alternative grounds. *First*, Laundry Service argues that it did not enter a binding nondisclosure agreement with Schnatter. *Second*, even assuming that it is bound by the nondisclosure agreement, Laundry Service argues that it did not forgo its right to arbitrate under that contract, and that the FAA requires the district court to send the dispute to arbitration.

Given the limited scope of our interlocutory review, we lack jurisdiction to review Laundry Service's first argument that it did not enter a binding contract. We do, however, have jurisdiction to review the district court's determination that Laundry Service defaulted on its arbitration rights. On that issue, we agree with the district court. Thus, we dismiss Laundry Service's appeal in part and otherwise affirm the district court's judgment. Schnatter urges us to go one step further by sanctioning Laundry Service for filing a frivolous appeal. We decline to do so.

## BACKGROUND

### I.      Papa John's' Relationship with Laundry Service

John Schnatter is the founder of Papa John's International, Inc., a prominent pizza delivery company. Until the events that led to this suit, he served as its CEO and the chair of its board. Schnatter sued Laundry Service, a marketing agency that Papa John's hired for various

services.**[1]**  Because this lawsuit stems from the relationship between Papa John's and Laundry Service, we start our description of the relevant facts with their relationship.

In late 2017, Papa John's hired Laundry Service to handle its brand strategy, creative work, and public relations.  Papa John's and Laundry Service formalized their relationship in a "master services agreement" (MSA).  The MSA required Papa John's and Laundry Service to maintain each other's confidences.  It also included an agreement to arbitrate all disputes related to the MSA.  But Schnatter himself was neither a party to the MSA nor a third-party beneficiary of it.

Shortly after it hired Laundry Service, Papa John's faced a public-relations crisis.  During an earnings call with Papa John's' investors and members of the media, Schnatter made comments that many attendees perceived as racially insensitive.  His remarks grabbed national headlines and sparked backlash.  The value of Papa John's' stock plummeted as the company scrambled to repair its image.  In the fallout, Schnatter stepped down as Papa John's' CEO, but retained his role as chair of the company's board.

Despite these changes, Papa John's and Laundry Service wondered whether the brand should distance itself even further from Schnatter.  Laundry Service began researching the public's perception of Papa John's generally and Schnatter in particular.  Based on its findings, Laundry Service recommended either trying to rehabilitate Schnatter's reputation or removing him from Papa John's' marketing materials.

## II.     Laundry Service's Brief Work with Schnatter

Expecting that Laundry Service would need to start working closely with Schnatter, Papa John's asked Laundry Service to sign a separate nondisclosure agreement (NDA) concerning Schnatter.  Papa John's had two boilerplate versions of the NDA—one drafted for the company's employees who were working with Schnatter, and the other for external vendors working closely with him.  Both versions included provisions requiring the parties to arbitrate all disputes between them, including those arising from the contract.  Accidentally, Papa John's sent Laundry

---

**[1]**The named appellee, 247 Group, LLC, does business as Laundry Service.

Service the NDA designed for its own employees.  The NDA, therefore, did not name or even reference Laundry Service.  Even so, a Laundry Service executive signed it, and a Laundry Service employee returned the NDA to Papa John's with a message stating, "Please see our signed agreement attached."  Op. & Order, R. 399, PageID 11095 (citation omitted).

After Laundry Service executed the NDA, Schnatter decided that he wanted to sit for an interview to show the public that he was not a racist.  In anticipation of that interview, Papa John's and Laundry Service scheduled a conference call with Schnatter to practice talking points and prepare Schnatter to discuss his views on race.

The preparation call did not go smoothly.  While floating possible responses to interview questions, Schnatter made a series of racially and politically charged statements.  At one point, he used the N-word.  At least a dozen people on the call—a mix of Papa John's and Laundry Service employees—heard Schnatter's remarks.  One of them secretly recorded the call.

Following this preparation call, the relationship between Schnatter, Papa John's, and Laundry Service soured.  About a month after the call, Papa John's and Laundry Service ended their contract.  Approximately one week later, Forbes published an article based on the surreptitious recording, exposing that Schnatter had used the N-word during a conference call.  Soon after, Schnatter resigned from Papa John's' board.

III.    **Procedural History**

Schnatter sued Laundry Service, convinced that one of its employees had leaked his comments to the press.[2]  Over the next four years, the case passed between four district court judges, Schnatter amended his complaint twice, Laundry Service filed multiple dispositive motions, and the parties exchanged tens of thousands of documents in discovery.  This extensive procedural history is detailed in the district court's decision.  Here, we summarize the portions that are relevant to our analysis of the issues on appeal.

---

[2]Schnatter also sued Laundry Service's parent company, Wasserman Media Group.  But the district court dismissed all claims against Wasserman, and it is not a party on appeal, so we do not discuss it.

A.      **Original Complaint**

Schnatter first sued Laundry Service in December 2019 in state court.  He raised three claims, including one for breach of the MSA.  Laundry Service removed the case to federal court and moved to dismiss for failure to state a claim.  Among other things, it argued that Schnatter's contract claim failed because he was neither a party nor a third-party beneficiary under the MSA.  Though the MSA contained an arbitration agreement, Laundry Service did not move to compel arbitration.  While Laundry Service's motion to dismiss was pending, a magistrate judge ordered the parties to start discovery.

Before the district court ruled on the motion to dismiss, Schnatter moved for leave to amend his complaint.  Nine months after Schnatter filed that motion, the district court granted him leave to amend.  By that point, Laundry Service had turned over almost 24,000 documents and had filed multiple motions to compel discovery responses from Schnatter.

B.      **First Amended Complaint**

Schnatter filed his first amended complaint in July 2021, adding three new counts and dropping one.  Relevant here, he claimed for the first time that Laundry Service had breached the NDA.  Laundry Service again moved to dismiss, contending that the NDA did not bind it.  In a single paragraph, Laundry Service asserted that if the court found otherwise, the NDA required the parties to arbitrate the contract dispute.  But Laundry Service did not move to compel arbitration.

More than a year after Laundry Service moved to dismiss, the district court heard arguments on its motion.  At the hearing, the district court noted that Laundry Service raised only "glancing arguments" on arbitration.  MTD Hr'g Tr., R. 221, PageID 4374.  The district court did not "rule on a motion to compel arbitration" because, as it explained to the parties, it did not "construe one as pending."  *Id.* at PageID 4375.  It also explained—and Laundry Service agreed—that if Laundry Service had moved to compel, it would have faced "a whole host of potential arguments about forfeiture and prejudice and appealability."  *Id.* at PageID 4374.  Even so, the district court invited Laundry Service to formally move to compel.  Laundry Service asked if it should do so "combined with potential summary judgment briefing" rather than in the

"next week or something like that." *Id.* at PageID 4429–30. The district court did not require the parties to rush, but also did not absolve Laundry Service of the responsibility of moving to compel if it wanted to arbitrate. The court explained:

> I don't think [Schnatter] will suffer any great prejudice from a one-week delay versus some number of months that might be contemplated in the proposed scheduling order, so I would just ask you-all to, you know, confer on what makes sense. . . .
>
> [W]hatever an increment of time between today and when you-all file a briefing proposal or when you actually file a motion to compel . . . probably is irrelevant . . . and I don't see any good in creating a fire drill in which you need to file a motion to compel . . . in ten days, and he needs to respond right away. I think we can take it up whenever it economically and reasonably makes sense now.

*Id.* at PageID 4430. Near the end of the hearing, the district court announced its decision to dismiss all of Schnatter's claims except for breach of the NDA.

## C.     Second Amended Complaint

Less than two months later, Schnatter moved for leave to amend his complaint a second time. He still pressed his NDA claim and proposed adding two new counts. The district court scheduled a status conference to decide how to proceed. At the conference, the district court warned that if the parties followed the normal motion-to-dismiss timeline on this second amended complaint, they would face a slow and expensive "cascade of briefing," with summary-judgment proceedings "waiting in the wings." Status Conf. Tr., R. 283, PageID 8613–14. So the district court suggested that Laundry Service file a single brief containing its arguments on "summary judgment, motion to dismiss," and "anything else that's on the table." *See id.* at PageID 8624.

Laundry Service questioned that proposal. It worried that if it filed a consolidated brief, it would not get to raise affirmative defenses on the standard timeline. Ordinarily, a defendant must raise affirmative defenses in its answer to the complaint. Fed. R. Civ. P. 8(c). And usually, the defendant may file its answer after the district court rules on any motion to dismiss, but before summary-judgment proceedings. *See* Fed. R. Civ. P. 12(a)(4). Because Laundry Service would not get to file an answer between moving to dismiss and moving for summary judgment,

it sought assurances that it would not "waiv[e] anything in terms of affirmative defenses" by agreeing to the district court's new briefing schedule. Status Conf. Tr., R. 283, PageID 8627. To allay its fears, Schnatter agreed that Laundry Service would not "waiv[e] anything by waiting" to file an answer. *Id.* at PageID 8628. But by the same token, Schnatter emphasized that he "d[id]n't want to waive [his own] rights" either. *Id.* So he "reserve[d] any rights until after an answer and affirmative defenses [we]re actually filed," at which point he would "see if there's anything [he] want[ed] to address." *Id.* Summarizing, the court asked whether, "[i]n other words," Schnatter was "waiving a timeliness or procedural objection but not any substantive objection[s]" to affirmative defenses that Laundry Service raised outside the typical timeline. *Id.* Schnatter agreed. After the hearing, the district court granted Schnatter's second motion for leave to amend "on the understanding that no party waives its rights to raise affirmative defenses." Text Order, R. 237.

Laundry Service filed its omnibus motion a few months later. Among other things, Laundry Service argued that the NDA was not enforceable against it. And even assuming the NDA bound it, Laundry Service contended, it had not breached the NDA's terms. Notably, Laundry Service did not request arbitration; it did not mention arbitration, even in the alternative. The district court granted summary judgment to Laundry Service on all of Schnatter's claims except for breach of the NDA. On that count, the district court found that Schnatter had raised triable questions on both contract formation and breach.

### D.      Motion to Compel Arbitration

About a month later, in September 2023, Laundry Service finally moved to compel arbitration. *See* 9 U.S.C. § 4. It also filed an answer, which raised "[m]andatory [a]rbitration" as an affirmative defense. Answer, R. 286, PageID 8656. The parties jointly asked the district court to resolve whether Laundry Service had lost its right to arbitrate before addressing whether the parties had entered an enforceable contract. The district court, however, decided to take both issues up at the same time. Consistent with § 4 of the FAA, the court scheduled a bench trial to resolve whether the parties had a valid agreement to arbitrate. After a two-day trial, the district court ruled in Schnatter's favor. It found that the NDA formed an enforceable contract that required the parties to arbitrate a dispute upon demand by either party. But the district court

further concluded that, "by aggressively litigating this case in court before moving to compel," Laundry Service had given up its contractual right to arbitrate.  Op. & Order, R. 399, PageID 11080.  As a result, the district court denied Laundry Service's motion to compel.

Laundry Service timely appealed under § 16(a) of the FAA.

## ANALYSIS

Laundry Service challenges the district court's denial of its motion to compel on two alternative grounds.  *First*, it contests the district court's decision that Laundry Service and Schnatter entered into a binding contract.  In its view, the executed NDA is unenforceable against Laundry Service, so Schnatter's entire breach of contract claim must fail.  *Second*, and alternatively, Laundry Service argues that if it is bound by the NDA, it should have the benefit of the NDA's arbitration clause.  So it asks us to reverse the district court's decision that it defaulted on its right to compel arbitration under the FAA.[3]

Before considering these two arguments, however, we must clarify our jurisdiction to review each of the district court's rulings.

## I.      Jurisdiction

Ordinarily, we have "jurisdiction only over appeals from final decisions of a district court."  *Bonner v. Perry*, 564 F.3d 424, 427 (6th Cir. 2009) (citing 28 U.S.C. § 1291).  As the parties acknowledge, there is no such final decision here, so before proceeding to the merits, we have to identify an applicable exception to the final-decision rule.  Laundry Service points us to two possible bases for exercising jurisdiction over its appeal.  *First*, § 16(a) of the FAA gives us interlocutory jurisdiction over a "narrow" set of arbitration-related decisions.  *U.S. ex rel. Dorsa v. Miraca Life Scis., Inc.*, 983 F.3d 885, 886, 888 (6th Cir. 2020) (citation omitted); *see also*

---

[3]A brief note on terminology.  We have often framed whether a party lost its "contractual right to arbitrate by participating in litigation" as a question of "waiver." *See Schwebke v. United Wholesale Mortg. LLC*, 96 F.4th 971, 974 (6th Cir. 2024); *see, e.g.*, *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 717 (6th Cir. 2012). But as we recently clarified, our cases are better understood as analyzing whether a party's actions placed it in "default" of its arbitration agreement under the FAA, not whether those actions amounted to "waiver." *Kloosterman v. Metro. Hosp.*, --- F.4th ---, 2025 WL 2463138, at *3–4 (6th Cir. Aug. 27, 2025) (quoting 9 U.S.C. § 3). Accordingly, here, the relevant question is whether Laundry Service's actions placed it in default of the NDA's arbitration agreement. *See* 9 U.S.C. § 3.

*Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023). *Second*, if we have interlocutory jurisdiction over the district court's default ruling, Laundry Service argues that we can exercise "pendent" jurisdiction over the contract-formation ruling because they are sufficiently related.

Scrutinizing our jurisdiction, as we must, we agree—but only in part. We conclude that the FAA gives us jurisdiction over the district court's ruling that Laundry Service defaulted on its arbitration rights, but not over its decision that the parties entered a valid agreement to arbitrate. And even though we have jurisdiction to review the default ruling, we cannot sweep in review of the contract-formation ruling by exercising pendent jurisdiction.

A.        **Interlocutory Review under FAA § 16(a)**

Section 16(a) of the FAA provides for interlocutory jurisdiction over an enumerated list of arbitration-related orders, and our review is "limited to those types of orders specified in [its] plain text." *Dorsa*, 983 F.3d at 888 (citation omitted). Relevant here, § 16(a)(1)(B) grants us jurisdiction to review an interlocutory order "denying a petition . . . to order arbitration to proceed." 9 U.S.C. § 16(a)(1)(B).

This exception, as made evident by its text, is a one-way ratchet. The FAA grants interlocutory jurisdiction over orders that "deny" motions to compel, but the same is not true of orders granting them. *See id.* § 16(b)(2), (3). Rather, although the FAA allows review of those interlocutory orders that "interfere with arbitration," it "specifically forecloses appeals" from certain "pro-arbitration interlocutory orders." *Preferred Care of Del., Inc. v. Est. of Hopkins ex rel. Hopkins*, 845 F.3d 765, 768–69 (6th Cir. 2017). This asymmetry in the FAA reflects Congress's "policy of favoring agreements to arbitrate disputes." *Id.* at 767.

*Default*. In analyzing our interlocutory jurisdiction under the FAA, we start with the easier question. The parties agree—as do we—that § 16(a) grants us jurisdiction to review the district court's decision that Laundry Service defaulted on its arbitration rights. As mentioned, under the plain text of § 16(a)(1)(B), we can review orders denying a motion to compel arbitration. 9 U.S.C. § 16(a)(1)(B). Here, the district court denied Laundry Service's motion to compel arbitration for one reason: In its view, Laundry Service had given up its right to arbitrate by litigating extensively and pursuing the merits in federal court. Thus, reviewing the district

court's decision "denying [Laundry Service's] petition" to compel arbitration requires us to address the default issue on the merits. 9 U.S.C. § 16(a)(1)(B).

*Contract Formation.* Next, we ask whether we have interlocutory jurisdiction under the FAA to review the district court's ruling that the NDA formed a binding contract between the parties. Laundry Service says the answer is "yes" because, in its view, contract formation is an underlying piece of the analysis in every decision denying arbitration. But we're not persuaded.

The district court's conclusion that the NDA bound the parties was not itself an order "denying" a motion to compel arbitration, or any other order listed in § 16(a). *See, e.g.*, 9 U.S.C. § 16(a)(1)(A), (a)(2) (allowing review of orders "refusing a stay of any action" pending arbitration or "granting . . . an injunction against an arbitration"). Nor was the district court's finding on contract formation the basis for its decision to deny Laundry Service's motion to compel. *Contra In re: Auto. Parts Antitrust Litig.*, 951 F.3d 377, 385–86 (6th Cir. 2020); *Noohi v. Toll Bros., Inc.*, 708 F.3d 599, 605 (4th Cir. 2013). The district court's formation decision, therefore, was not within one of the enumerated categories in § 16(a) that we have interlocutory jurisdiction to review.

Quite the opposite; the district court's decision that the parties entered into a binding arbitration agreement was, if anything, a "pro-arbitration decision" of the type that we typically lack interlocutory jurisdiction to review. *Hopkins*, 845 F.3d at 769 (citation omitted). True, the district court's finding on contract formation does not fit neatly into the list of orders that the FAA expressly excludes from its grant of interlocutory jurisdiction. *See* 9 U.S.C. § 16(b). But its ruling "favor[ed] arbitration" by recognizing the existence and validity of the arbitration agreement between Schnatter and Laundry Service. *See Hopkins*, 845 F.3d at 768. And the FAA does not grant us review over non-final orders that advance Congress's policy favoring arbitration. *See id.* at 767.

Laundry Service responds that § 16(a) gives us jurisdiction to "review[] all aspects" of the district court's order denying its motion to compel arbitration. Reply Br. at 6. But appellate jurisdiction under the FAA is not all-or-nothing. Section 16(a) does not grant us unbounded jurisdiction to review every issue in the district court's opinion that could resolve the appeal in

favor of the party seeking arbitration. Rather, it allows us to review decisions that prevented the district court from compelling arbitration. *See Boshears v. PeopleConnect, Inc.*, 76 F.4th 858, 861–62 (9th Cir. 2023) (citing *BP P.L.C. v. Mayor & City Council of Balt.*, 141 S. Ct. 1532, 1538 (2021)).

Two examples illustrate this point. In *Turi v. Main Street Adoption Services, LLP*, the defendant moved to dismiss the plaintiffs' claims for lack of personal jurisdiction, improper venue, and the existence of an arbitration agreement. 633 F.3d 496, 500 (6th Cir. 2011), *abrogated on other grounds*, *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019). The district court denied the motion to dismiss in part, finding that for some claims it had personal jurisdiction, venue was proper, and the conduct fell outside the arbitration agreement's scope. *Id.* On appeal, we exercised jurisdiction under § 16(a) to review the district court's holding on arbitrability. *Id.* at 501. But we held that we lacked jurisdiction to review the district court's findings on personal jurisdiction and venue. *Id.* at 501–04. Likewise, in *O'Hanlon v. Uber Technologies, Inc.*, the defendant moved to compel arbitration and argued in the alternative that the plaintiffs lacked standing to sue. 990 F.3d 757, 761 (3d Cir. 2021). The district court "rejected both arguments" and denied the defendant's motion to compel. *Id.* at 761–62. When the defendant appealed, the Third Circuit held that § 16(a) granted it jurisdiction "to review the District Court's denial of [the defendant's] motion to compel arbitration," but not "its ruling that Plaintiffs have standing to sue." *Id.* at 762, 765. *Turi* and *O'Hanlon* illustrate that, under § 16(a), we may review only those ancillary findings that supported the district court's decision to deny a motion to compel arbitration.

Laundry Service's remaining counterarguments are also unavailing. It contends that the FAA requires district courts to analyze contract formation before ruling on a motion to compel arbitration. Its argument is based on § 4 of the FAA. But it does not provide any authority that, under § 16, appellate courts must (or even can) "address the contract-formation issue in interlocutory appeals like this one," where the district court denied a motion to compel for reasons unrelated to contract formation. Reply Br. at 2. Indeed, in every case that Laundry Service cites from our court and nearly every one that it cites from our sister circuits, the district

court had denied a motion to compel for lack of a valid arbitration agreement covering the plaintiff's claims.

Our cases stand for a more modest rule than the one Laundry Service suggests: Section 16(a) allows us to review an interlocutory ruling on contract formation only when that ruling supplied the basis for the district court's denying a motion to compel arbitration. By that measure, we lack jurisdiction under § 16(a) to review the district court's finding on formation here.

### B.      Pendent Jurisdiction

Even though we lack interlocutory jurisdiction under § 16(a) to review the district court's contract-formation decision, Laundry Service argues that there is another path—pendent jurisdiction. "[P]endent appellate jurisdiction" is another narrow "exception to the general rule that only final orders are immediately appealable." *Turi*, 633 F.3d at 502 (citation omitted). Under this doctrine, we may review otherwise non-appealable interlocutory issues that are "inextricably intertwined" with matters over which we have jurisdiction. *See Kerchen v. Univ. of Mich.*, 100 F.4th 751, 759 (6th Cir. 2024). We deem issues "inextricably intertwined" when "the resolution of the appealable issue necessarily and unavoidably decides the nonappealable issue," or when considering the nonappealable issue is "necessary to ensure meaningful review" of the appealable one. *Summers v. Leis*, 368 F.3d 881, 889–90 (6th Cir. 2004) (cleaned up). Because we have interlocutory jurisdiction under § 16(a) of the FAA to review the district court's default ruling, we may exercise pendent jurisdiction over the contract-formation decision if it is "inextricably intertwined" with the default decision. But in our view, it is not.

Resolving the default question (the appealable issue) does not "necessarily and unavoidably" resolve contract formation (the nonappealable issue). The district court's conclusion that Laundry Service defaulted on its arbitration rights rested on the court's analysis of Laundry Service's litigation conduct and failure to move to compel arbitration until after losing its motion for summary judgment. Although the court resolved the contract-formation issue first, it did not have to do so. It could have just assumed a valid contract and then decided default based on the same litigation conduct underlying its decision. Until Laundry Service

appealed, even it did not think that these issues rose and fell together. Indeed, Laundry Service asked the district court not to schedule a trial on contract formation until it first ruled on default. Similarly, if we do not review contract formation now, we do not deprive Laundry Service "meaningful review" of the issue. Rather, Laundry Service can appeal the district court's ruling that the NDA bound the parties in the normal course after final judgment.

In response, Laundry Service states that "taking up this question now will advance final resolution of this case," Reply Br. at 7. But judicial economy alone does not justify exercising pendent appellate jurisdiction. *See Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 45, 51 (1995). Nor does it bear on § 16(a), which does not mention efficiency considerations. *See Hopkins*, 845 F.3d at 768. To the contrary, the FAA requires courts to "rigorously enforce [an] agreement[] to arbitrate, even if the result is 'piecemeal' litigation." *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985) (citation omitted). Thus, we decline to exercise pendent jurisdiction over the district court's finding on contract formation.

## II.    Default Under FAA § 3

We turn now to the one issue we have jurisdiction to review in this interlocutory posture—whether Laundry Service defaulted on its right to arbitrate disputes under the NDA. A party defaults on an arbitration agreement when it takes actions that are "completely inconsistent" with an intent to arbitrate. *See Kloosterman v. Metro. Hosp.*, --- F.4th ---, 2025 WL 2463138, at *4 (6th Cir. Aug. 27, 2025) (quoting *Schwebke v. United Wholesale Mortg. LLC*, 96 F.4th 971, 975 (6th Cir. 2024)). Our inquiry elides "bright-line rule[s]" and weighs the "totality of the circumstances." *See Schwebke*, 96 F.4th at 976. One consideration is whether the party knew or should have known it could arbitrate, yet sought affirmative relief from the courts before moving to compel arbitration. *See id.* at 975–76 (citing *Solo v. United Parcel Serv. Co.*, 947 F.3d 968, 975 (6th Cir. 2020)); *In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*, 143 F.4th 718, 724 (6th Cir. 2025). In particular, we have consistently held that seeking "an immediate and total victory" before invoking the right to arbitrate "is entirely inconsistent with later requesting that those same merits questions be resolved in arbitration." *See Solo*, 947 F.3d at 975 (citations omitted); *accord Kloosterman*, 2025 WL 2463138, at *5 (collecting cases).

Laundry Service knew that the NDA contained an arbitration agreement it could enforce against Schnatter. It acknowledged as much by invoking its arbitration rights in its second motion to dismiss. Laundry Service also understood the risks of not moving to compel arbitration sooner. The district court had noted at its hearing on Laundry Service's second motion to dismiss that, given how far the suit had progressed, any motion to compel arbitration might implicate "forfeiture and prejudice and appealability" issues, among others. MTD Hr'g Tr., R. 221, PageID 4374. And Laundry Service knew that, in its omnibus motion, it could move to compel arbitration in the alternative to moving for summary judgment and dismissal. Indeed, the district court had instructed it to address "summary judgment, motion to dismiss," and "anything else that's on the table" in its omnibus motion, Status Conf. Tr., R. 283, PageID 8624, and had told Laundry Service that it could move to compel arbitration "combined with potential summary judgment briefing," MTD Hr'g Tr., R. 221, PageID 4429–30.

Yet Laundry Service acted "entirely inconsistent[ly]" with an intent to arbitrate. *Solo*, 947 F.3d at 975 (citation omitted). In its omnibus motion, Laundry Service sought a final judgment on the merits of Schnatter's NDA claim, not a referral to arbitration. *See id.* And despite knowing that it could seek arbitration, Laundry Service did not move to compel until after the district court denied summary judgment. That timing strongly suggests that Laundry Service did not intend to arbitrate—at least not until it "test[ed] the water" in federal court. *See Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 717 (6th Cir. 2012) (cleaned up); *see also Gunn v. NPC Int'l, Inc.*, 625 F. App'x 261, 265 (6th Cir. 2015). Now, Laundry Service wants an arbitrator to decide not only open questions like breach, but also issues it already lost on the merits, like contract formation and default. Our cases do not allow this "heads I win, tails you lose" approach. *See Kloosterman*, 2025 WL 2463138, at *5 (quoting *Cabinetree of Wisc., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995)). By seeking complete victory on the merits in the district court without invoking its arbitration rights even in the alternative, Laundry Service manifested its intent to litigate rather than arbitrate this dispute.

In response, Laundry Service contends that it did not need to move to compel until after the district court ruled on contract formation. It roots its argument in the text of § 4, which requires district courts to "proceed summarily to the trial" on contract formation if it is "in

issue," and to resolve contract formation before granting a motion to compel arbitration. 9 U.S.C. § 4. But at bottom, § 4 describes the steps a district court should take *after*—not *before*—a party moves to compel arbitration. *See id.* (stating that a party may petition "for an order directing that such arbitration proceed," and after "[s]ervice thereof [is] made," the "court shall hear the parties" and decide whether "the making of the agreement for arbitration" is "in issue"). Even assuming that Laundry Service did not have to move to compel until someone placed formation "in issue"—a premise that misreads § 4—Laundry Service placed formation "in issue" by arguing in its motion to dismiss that the NDA did not bind it. *See* Appellant's Br. at 55. Thus, on its own terms, Laundry Service missed the boat to invoke its arbitration right.

As a final salvo, Laundry Service blames its litigation conduct on things that the district court and Schnatter said. It contends that it argued the merits before seeking arbitration only because the district court "expressly ordered [it] to do so." Reply Br. at 27 (quoting *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1351 (11th Cir. 2017)). But the district court ordered Laundry Service to combine its arguments on "summary judgment, motion to dismiss," and "*anything else that's on the table*" in its omnibus motion, an instruction that Laundry Service did not follow. Status Conf. Tr., R. 283, PageID 8624 (emphasis added). Next, Laundry Service says that it relied on assurances from the district court and Schnatter that it could invoke its arbitration right at any point. Yet at most, the district court affirmed that Laundry Service could move to compel arbitration "combined with potential summary judgment briefing." MTD Hr'g Tr., R. 221, PageID 4429. And although Schnatter agreed not to fault Laundry Service for failing to file an answer on the usual timeline, he maintained that he did not waive objections to the affirmative defenses themselves. Neither the district court's docket management nor Schnatter's professional courtesy immunized Laundry Service from default.

## III.    Sanctions

Although Laundry Service does not prevail in this appeal, we reject Schnatter's call for sanctions. We may issue sanctions against Laundry Service if "(1) [its] appeal is frivolous, and (2) sanctions are appropriate." *Dubay v. Wells*, 506 F.3d 422, 432 (6th Cir. 2007) (citation omitted); Fed. R. App. P. 38. An appeal is frivolous "when the result is obvious or when the appellant's argument is wholly without merit." *Dubay*, 506 F.3d at 433 (citation omitted).

Though we disagree with many of Laundry Service's arguments, we do not consider them frivolous. *Id.* Accordingly, we deny Schnatter's request for sanctions.

## CONCLUSION

We dismiss Laundry Service's appeal in part for lack of jurisdiction; otherwise we affirm the district court's judgment and deny Schnatter's request for sanctions.